No. 12,493.

HERRERA *v.* THE PEOPLE.

(287 Pac. 643)

Decided April 28, 1930.

Mr. MORTON M. DAVID, for plaintiff in error.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. SIDNEY P. GODSMAN, Assistant, for the people.

*En Banc.*

MR. CHIEF JUSTICE WHITFORD delivered the opinion of the court.

PLAINTIFF in error, Amelio Herrera, was convicted of murder in the first degree, for killing his wife. The jury fixed the death penalty. To review the judgment entered upon that verdict the defendant prosecutes this writ of error.

The principal contention urged for the reversal of the

judgment is the refusal of the lower court to direct a verdict of not guilty of murder in the first degree.

The plaintiff in error and the deceased were both of the Mexican race. They were married in 1927. They lived in Denver. He was an employee of the Denver and Rio Grande railroad, as a section hand. It appears that after their evening meal, on June 29, 1929, the defendant and his wife walked to the central part of the city, and on their return trip jealousies arose between them which resulted in a heated conversation and the use of irritating language toward each other. Upon their return, at about 10 o'clock, in front of the building in which they occupied a two-room apartment, the defendant was seen to grab his wife by the arm, and violently pull her along the sidewalk and into a dark and narrow passageway which separated the house in which they lived from the adjoining property. Shortly thereafter a passing policeman, as well as persons living in the neighborhood, heard the report of a gunshot, and the scream of a woman, which was followed by three more shots, occurring in rapid succession. Officer Morrissey ran after a man fleeing from the premises, but he failed to capture him. When Morrissey returned to the premises where the shooting had occurred, he found in the apartment occupied by the defendant and his wife, the body of the deceased, lying on top of a trunk in the bedroom, the body pierced by several gunshot wounds. She was fully dressed, with her street coat on. Morrissey immediately notified the coroner and the officers of the police department. An autopsy, conducted by the coroner, disclosed four gunshot wounds, each of which, excepting one, being sufficient to cause death. The bullets all entered the body from the left side, the left arm, the left side of the back, the left side of the chin, the left side of the neck.

After the shooting the defendant ran from the house and into the railroad yards, and there he hid his gun under a platform. He then went to a rooming house at 1955 Larimer street for lodgings for the night, which

place was more than one-half mile from the place of the murder, and registered under the assumed name of Peter Martinez. On the following morning, after his arrest, he persisted in the statement made to the police officers, and continued to do so for more than a day's time thereafter, that his wife had committed suicide, by shooting herself four times. In answer to the questions propounded by the officers, he said that his wife was right-handed, and that she held the gun in her right hand when she shot herself. In a subsequent interview, when the officers handed him an empty gun, with the request that he make a physical demonstration to them how it could be possible for the deceased to inflict upon herself the bullet wounds found upon her body while she was holding the gun, as he stated, in her right hand he changed his statement, and said: "I will tell you the truth, I shot her." He then said that his wife did not commit suicide, and thereupon confessed to the officers that he, himself, had shot her four times. Later in the afternoon, while the police officers were waiting for the arrival of the district attorney, for the purpose of taking the defendant's written statement, the defendant again changed his statement, and said that his wife got the gun, and that he took the gun away from her, and that he then shot her four times. On the witness stand the defendant again changed his testimony. He said that his wife threatened to kill him, and said that she would then kill herself, and that immediately after this threat she took the gun from the trunk. When he seized hold of it and tried to take it away from her, in the struggle which ensued for the possession of the gun it was discharged, and hit her in the chin, and that she fell down, after which he shot her three times, and that he then ran away. Later in his testimony he made the contradictory statement that she did not fall down after the first shot, but remained in a standing position, all the while facing him, until after the second shot, when she fell, lengthwise, on the trunk, lying on her right side, with her back close to the wall, and that while

she lay in that position he shot her in the neck. He gave no account, consistent with his previous testimony, as to how, or when, he shot her in the back. He said that she continued to face him until after the second shot, when she fell on the top of the trunk, with her back to the wall. He gave the only oral testimony as to what took place in the apartment immediately preceding the murder. His statements and testimony were inconsistent and self-contradictory in many essential particulars, and the truth as to the facts necessarily had to be deduced by the jury from a consideration of his testimony in the light of the indisputable physical facts, and with respect to all the surrounding circumstances in evidence. Whether or not she took the gun from the trunk, whether there was a struggle for its possession, whether it was then discharged as a result of the struggle, and whether or not the first shot entered the chin, the arm, the back, or the neck, and all the other questions of fact, were for the exclusive determination of the jury, and not for this court.

The trial court told the jury, in its instructions, that they were the sole judges of the credibility of the witnesses, and of the weight to be given to the testimony of each witness, and that the defendant, as a witness, became the same as any other witness, and that his credibility was to be subjected to the same tests as that applied to other witnesses. If the jury, in the exercise of its constitutional prerogative, believed the statement of the defendant that he, himself, shot the deceased four times, this court cannot disturb that conclusion, or find otherwise, in the face of the law and the Constitution, which make the jury the indispensable fact-finding tribunal in all capital cases. If the jury found that the defendant's testimony, with respect to his wife's getting the gun, and the struggle for its possession, and its discharge as a result of the struggle, and the first shot taking effect in the chin, was incredible and false, it is not the province of this court to set aside that finding, and to substitute therefore a different one, and to say to the

jury that it should have accepted the testimony of the defendant, as to those matters, as true. Such a contention cannot be sustained.

It will be sufficient to say that we find no error in the rulings of the trial court in admitting the exhibits in evidence.

■ We have carefully examined the transcript, and the record proper, in the light of all objections interposed, and assignments of error, and we are convinced that the defendant had a fair and impartial trial and that the evidence was amply sufficient to convince the jury, beyond all reasonable doubt, of the guilt of the defendant of murder in the first degree. We find no error in the record.

The judgment is affirmed.

It is ordered that the judgment be executed during the week commencing Monday, the 18th day of August, 1930.